IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-01245-EWN-CBS

MICHAEL WHITINGTON,
    Plaintiff,
v.

LT. SOKOL,
JOHN DOE,
C/O STRICKLER,
C/O SPROWELS,[1]
C/O PINEDA,
C/O CALDWELL, and
C/O JOHNSON,
    Defendants.

---

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Craig B. Shaffer

This civil action comes before the court on the "State Defendants' Motion for Summary Judgment" (filed May 30, 2008) (doc. # 142). Pursuant to the Order of Reference dated November 21, 2006 (doc. # 30) and the memorandum dated June 2, 2008 (doc. # 143), this matter was referred to the Magistrate Judge. The court has reviewed the Motion, "Plaintiff's Response to the Defendants['] Motion for Summary Judgment" ("Response") (filed July 16, 2008) (doc. # 162), the "State Defendants' Reply in Support of the Motion for Summary Judgment" (filed September 15, 2008) (doc. # 174), the exhibits and affidavits, the entire case file, and the applicable law and is sufficiently advised in the premises.

I.    Statement of the Case

Mr. Whitington is a prisoner currently incarcerated at the Sterling Correctional

---

[1] Defendant Sprowels has not been served or executed a waiver of service. He is no longer employed by and cannot be served at the Colorado Department of Corrections. Nor could he be served at his forwarding address. (*See* docs. # 31, # 33).

1

Facility of the Colorado Department of Corrections ("CDOC") in Sterling, Colorado. Proceeding *pro se*, Mr. Whitington brings one claim for relief pursuant to 42 U.S.C. § 1983. Mr. Whitington alleges that on October 25, 2001 at the Limon Correctional Facility ("LCF"), he was transferred from segregation status in Living Unit I to restricted privileges status in Living Unit III. (*See* Affidavit of Ken Sokol (doc. # 142-2) at ¶¶ 4, 6; Complaint (doc. # 3) at p. 7 of 18). Mr. Whitington had been ordered to make this move on several occasions and had refused to comply with the requirement to wear the orange pants that identified inmates on restricted privileges status. (*See* Affidavit of Ken Sokol (doc. # 142-2) at ¶ 4; Complaint (doc. # 3) at pp. 4-5 of 18; Affidavit of Michael Whitington (doc. # 162) at pp. 22-23, 45-48 of 92). Based on his refusals, Mr. Whitington remained in segregation and was charged with disciplinary violations. (*See* Response (doc. # 162) at p. 10 of 92).

On October 25, 2001, Mr. Whitington again refused to comply with the requirement to wear orange pants for his transfer to Living Unit III. (*See* Affidavit of Ken Sokol (doc. # 142-2) at ¶¶ 6, 7; Complaint (doc. # 3) at pp. 7-8 of 18; Affidavit of Michael Whitington (doc. # 162) at p. 24 of 92). Mr. Whitington alleges that Defendants Strickler and Johnson placed him in full restraints and escorted him to the prison's receiving area, where he was ordered to enter a large holding cell and his restraints were removed. (*See* Complaint (doc. # 3) at p. 7 of 18). Mr. Whitington alleges that when he refused to wear the orange pants Defendant Sokol ordered Defendants Sprowels, Pineda, Caldwell, Strickler, and Johnson to strip him and handcuff him behind his back. (*See* Complaint (doc. # 3) at p. 8 of 18). Mr. Whitington alleges that Defendants Sprowels, Pineda, Caldwell, Strickler, and Johnson "attacked" him, threw him to the floor, punched him in the back, banged his head on the concrete and shocked him on his testicles and neck. (*See* Complaint (doc. # 3) at pp. 8-9 of 18). He alleges that he was then placed in a restraint chair and taken to the medical department, where he was "given a brief and partial examination by medical staff." (*See* Complaint (doc. # 3) at p. 10 of 18; Affidavit of Michael Whitington (doc. # 162) at p. 25 of

92, ¶ 36). Mr. Whitington claims that Defendants used excessive force on him in violation of his Eighth Amendment right to be free from cruel and unusual punishment. (Complaint (doc. # 3) at pp. 7-14 of 18). As relief, Mr. Whitington seeks compensatory and punitive damages. (Complaint (doc. # 3) at pp. 17-18 of 18).

II.     Standard of Review

Defendants have moved for summary judgment on the Complaint on the grounds that: (1) Mr. Whitington's claim is barred by the statute of limitations; (2) Mr. Whitington fails to demonstrate a violation of the Eighth Amendment; and (3) Defendants are entitled to qualified immunity.

> Summary judgment should only be granted where, taking the facts in the light most favorable to the non-moving party, there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Although the burden is on the moving party, the non-movant may not rest on [his] pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which [he] carries the burden of proof.

*Pignanelli v. Pueblo Sch. Dist. No. 60*, 540 F.3d 1213, 1216-17 (10th Cir. 2008) (internal quotation marks and citations omitted). "While plaintiffs' pro se pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers, plaintiffs must nonetheless set forth sufficient facts to support their claims." *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 674 (10th Cir. 2002) (citation omitted).

II.     Analysis

A.      Statute of Limitations

Mr. Whitington brings his claim pursuant to 42 U.S.C. § 1983. Federal courts must look to the applicable state statute of limitations to determine the timeliness of a claim brought under § 1983. *Blake v. Dickason*, 997 F.2d 749, 750 (10th Cir. 1993). Colorado law provides a two-year statute of limitations for actions brought pursuant to § 1983. *See*

Colo. Rev. Stat. § 13-80-102(g) (establishing a two-year limitation period for "all actions upon liability created by a federal statute where no period of limitation is provided in said federal statute" and for "all other actions of every kind for which no other period of limitation is provided"); *Blake v. Dickason*, 997 F.2d at 750 (applying § 13-80-102 to § 1983 claim). The determination of when a § 1983 action accrues is controlled by federal rather than state law. *Smith v. Gonzales*, 222 F.3d 1220, 1222 (10th Cir. 2000) (citation omitted). "Section 1983 claims accrue, for the purpose of the statute of limitations, 'when the plaintiff knows or has reason to know of the injury which is the basis of his action.' " *Johnson v. Johnson County Comm'n Bd.*, 925 F.2d 1299, 1301 (10th Cir.1991) (quoting *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir.1980) (further quotations omitted)).

It is undisputed that Mr. Whitington filed the Complaint on or about June 28, 2006 and that Mr. Whitington's claim arises from an incident that occurred on October 25, 2001, more than four years before Mr. Whitington filed his Complaint. (*See* Complaint (doc. # 3) at p. 7 of 18). Mr. Whitington argues that the statute of limitations should be tolled because he was under a mental disability while he was housed at the Colorado Mental Health Institute ("CMHI") and the San Carlos Correctional Facility ("SCCF") from October 30, 2001 to on or about June 28, 2006. (*See* Affidavit (doc. # 53) at ¶ 10 (wherein Mr. Whitington asserts that he was mentally incompetent "between the date the plaintiff was assaulted and the date the plaintiff filed his complaint in federal court.")). Alternatively, Mr. Whitington argues that he did not discover his claim until May 25, 2005. (*See* Response (doc. # 162) at p. 9 of 92).

State law determines the applicable tolling provisions for § 1983 actions. *Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995). "Once the statute of limitations is raised as an affirmative defense, the burden shifts to the plaintiff to show that the statute has been tolled." *Overheiser v. Safeway Stores, Inc.*, 814 P.2d 12, 13 (Colo. App. 1991). "Colo. Rev. Stat. § 13-81-103 provides for the tolling of any limitations period for the

commencement of an action by any person suffering from a disability and provides that unrepresented persons with a disability may bring an action up to two years after the disability terminates." *Neiberger v. Hawkins*, 208 F.R.D. 301, 311 (D. Colo. 2002).

It is undisputed that five days after the alleged assault on October 25, 2001, Mr. Whitington was transferred to CMHI for psychiatric treatment. (*See* Response (doc. # 162) at p. 54 of 92). Mr. Whitington asserts that he was mentally incompetent "between the date the plaintiff was assaulted and the date the plaintiff filed his complaint in federal court." (*See* Affidavit (doc. # 53) at ¶ 10). Defendants have presented evidence that Mr. Whitington engaged in various activities at CMHI and SCCF that are inconsistent with his allegation that he was mentally incompetent during that time. For example, upon Mr. Whitington's arrival at the CMHI on October 30, 2001, he was immediately concerned with getting his "legal papers." (*See* Affidavit of John R. DeQuardo, M.D. (doc. # 142-4) at ¶ 10; *see also* doc. # 142-4 at p. 8 of 9). On November 15, 2001, two weeks after arriving at CMHI, Mr. Whitington filed a letter in Denver District Court Case No. 98CR1475, wherein he informed the court of his change of address and inquired as to the status of two motions. (*See* doc. # 142-5).

Mr. Whitington was transferred from CMHI to SCCF on or about May 9, 2002. (*See* Affidavit of Thomas Kolle (doc. # 142-6) at p. 1 of 30, ¶ 2; *see also* Mr. Whitington's "Answer to State Defendants' Motion to Dismiss" (doc. # 52) at p. 1 of 20). While at SCCF, on October 27, 2002, Mr. Whitington filed a formal Step 1 grievance, seeking access to books in the law library two days a week. (*See* Affidavit of Thomas Kolle (doc. # 142-6) at p. 2 of 30, ¶ 5; *see also* p. 13 of 30). On June 13, 2003, Mr. Whitington "requested [and] was given kites for interview and the library." (*See* Response (doc. # 142-6) at p. 53 of 92). Mr. Whitington filed through his attorney a "Supplemental Motion for Post-Conviction Relief Pursuant to C.R.Crim.P. 35(c)" on September 2, 2003 and a "Request to Reset the Hearing" on February 20, 2004 in Denver District Court case numbers 98CR1475,

98CR1478, 98CR1481, and 98CR1482. (*See* docs. # 142-7, # 142-8). Nowhere did Mr. Whitington's attorney mention that his client was incompetent.[2] On December 12, 2003, Mr. Whitington wrote a letter to Major Bobby Lynn, Programs Manager at SCCF, seeking access to business telephone books and requesting that the policy prohibiting inmate access to the phone books be changed. (*See* doc. # 142-6 at p. 14 of 30). In the letter, Mr. Whitington stated "I am in the T.C. Program and I am voluntarily teaching two classes one is a class on vocational training to include apprenticeships for various trades in the Denver area [sic]. Second I am preparing to start a class on public housing and H.U.D. programs that are available to the mentally disabled. I am unable to obtain addresses to these government agencies due to the present policy that is in place." (*See id.*). In June 2004, Mr. Whitington "describe[d] 'staying busy' all the time with law and different studies." (*See* Response (doc. # 162) at p. 61 of 92).

While at SCCF, Mr. Whitington was warned on several occasions about doing legal work for other inmates. (*See* doc. # 142-6 at p. 2 of 30, ¶ 3). On or about August 1, 2003, Whitington was found guilty of violating the Code of Penal Discipline ("COPD") against Bartering, Selling, Goods/Commodities or Services for attempting to collect a debt based on doing legal work for other inmates. (*See* doc. # 142-6 at p. 2 of 30, ¶ 4; pp. 7-12 of 30; *see also* doc. # 174-4 at p. 3 of 3). Mr. Whitington defended the charge by admitting "that he bartered and sent the note but felt that the charge should have been an attempt." (*See* doc. # 142-6 at p. 8 of 30). While Mr. Whitington now denies performing legal work for

---

[2] "[T]he criminal lawyer's obligation to advocate the positions of his client is dependent on the client being mentally competent to stand trial." *United States v. Boigegrain*, 155 F.3d 1181, 1188 (10th Cir. 1998) (citation omitted). "[T]he defendant's lawyer is not only allowed to raise the competency issue, but, because of the importance of the prohibition on trying those who cannot understand proceedings against them, she has a professional duty to do so when appropriate." *Boigegrain*, 155 F.3d at 1188 (citations omitted). *See also* ABA Standards for Criminal Justice Standard 7-4.2(c) (2d ed. 1986) ("Defense counsel should move for evaluation of the defendant's competence to stand trial whenever the defense counsel has a good faith doubt as to the defendant's competence.").

other inmates, the record supports Defendants' argument that Mr. Whitington was not mentally incompetent at the time of the disciplinary charge. Mr. Whitington's argument that he was not prohibited from performing legal work for other inmates (*see* Response (doc. # 162) at p. 4 of 92, ¶ 19, pp. 7, 27-28 of 92) does not refute the evidence that he was mentally capable of pursuing this lawsuit in 2003.

The evidence before the court does not support Mr. Whitington's allegation that he was mentally incompetent between October 25, 2001 and the filing of this lawsuit on or about June 28, 2006. The evidence shows that Mr. Whitington monitored his pending legal cases while he was at CMHI and SCCF. Mr. Whitington's written communications during that time period were coherent and do not indicate a lack of mental competence. Mr. Whitington's claim of mental incompetence is inconsistent with his assertions that he clearly remembers every detail of the Defendants' conduct on October 25, 2001.

Mr. Whitington has submitted only his own testimony concerning his mental competence. The professional medical evidence in the record shows that while he suffered from mental illnesses, Mr. Whitington was not incompetent during the time period relevant to this case. (*See* Affidavit of John R. DeQuardo, M.D. (doc. # 174-2) at ¶¶ 3-15; *see also* doc. # 174-3 at pp. 3-5 of 5). There is no evidence in the record that Mr. Whitington has ever been adjudged incompetent. (*See, e.g.*, Response (doc. # 162) at pp. 49-83 of 92). The opinion of Diane M. Gard, Ph.D. regarding Mr. Whitington's reduced mental capacity addressed his condition on August 27, 1998, a date not within the time period relevant here. (*See* Response (doc. # 162) at p. 92 of 92). The evidence shows that "Mr. Whitington's condition improved greatly during his stay at the hospital." (*See* doc. # 142-4 at ¶ 14). Upon his departure from the CMHI on May 9, 2002, Mr. Whitington "was mentally competent" and his mental health condition would not have "prevented him from being able to file a lawsuit and participating in the legal process." (*See* doc. # 142-4 at ¶¶ 15-16).

Nor does the evidence before the court support Mr. Whitington's argument that he

7

did not discover his claim until May 25, 2005. (*See* Response (doc. # 162 at p. 9 of 92). First, Mr. Whitington submits only his own conclusory allegations that he did not discover his claim until May 25, 2005. (*See* Response (doc. # 162) at p. 9 of 92). Second, the evidence is directly contrary to Mr. Whitington's argument that he did not discover his claim until May 25, 2005. (*See* Response (doc. # 162) at p. 55 of 92 (Mr. Whitington said on October 30, 2001 that "the guards 'shocked' him because they wanted to put the orange pants on. Pt. said they (Limon) did this last week.")).

Based on the evidence before it, the court does not abuse its discretion in declining to toll the statute of limitations based on Mr. Whitington's alleged mental disability. Mr. Whitington's claim is thus barred by the statue of limitations.


B.      Violation of Eighth Amendment and Qualified Immunity

In light of the court's conclusion that Mr. Whitington's claim is barred by the statute of limitations, the court need not reach the Defendants' remaining arguments that Mr. Whitington has failed to prove a violation of the Eighth Amendment and that Defendants are entitled to qualified immunity.


Accordingly, IT IS RECOMMENDED that the "State Defendants' Motion for Summary Judgment" (filed May 30, 2008) (doc. # 142) be GRANTED and that summary judgment on the Complaint enter in favor of Defendants and against Plaintiff, with each party to pay his own attorney fees and costs.


**Advisement to the Parties**

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of

Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 16th day of October, 2008.

BY THE COURT:

s/Craig B. Shaffer
United States Magistrate Judge